In re Nesbit Lee LACY, a/k/a N. Lee Lacy, a/k/a Lee Lacy, Debtors.

No. 00–23048–SBB.

United States Bankruptcy Court, D. Colorado.

July 28, 2006.

Matthew J. Fairshter, Bennett & Fairshter, LLP, Pasadena, CA, Pro Se.

Gregory L. Williams, Block, Markus & Williams, LLC, Denver, CO, for Stinky Love, Inc.

Lee M. Kutner, Kutner Miller, P.C., Denver, CO, for the Debtor.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court on May 9, 2006, for hearing to consider if sanctions should be entered by this Court against Matthew Fairshter ("Mr.Fairshter") and Bennett & Fairshter, LLP ("B & F")[1] for Mr. Fairshter's and B & F's conduct in this Chapter 11 proceeding, as set forth in the Court's Minutes of Proceeding dated February 21, 2006 (Docket #877) and this Court's Order to Show Cause and Notice of Hearing on Sanctions issued on March 8, 2006 (Docket #884).

This is a case involving Mr. Fairshter and B & F, the Debtor's non-bankruptcy California counsel, who provided legal services to the Debtor prepetition, postpetition, preconfirmation and postconfirmation of the Debtor's Chapter 11 Plan. The Debtor's Chapter 11 case has a long and tortured history—as does the role of Mr. Fairshter and B & F in the Debtor's litigation and legal affairs.

The Court, here, addresses the propriety of various acts and conduct of Mr. Fairshter and B & F that were part of or related to the Chapter 11 case. Some of

---

1. The Court was advised at the May 9, 2006 hearing that B & F has merged or been consolidated into the law firm Dykema Gossett LLP. Mr. Fairshter was a partner with B & F who appeared before this Court in this matter and whose conduct is primarily at issue.

the relevant history and conduct of Mr. Fairshter and B & F is detailed in previous published opinions, including *In re Lacy*, 335 B.R. 729 (10th Cir. BAP 2006). The Court, for the purpose of brevity in this opinion, adopts and incorporates herein, in their entirety, the findings and conclusions recited in that opinion. The Court, having reviewed the Court's file in this matter, and having conducted a hearing on May 9, 2006, makes the following specific findings of fact, conclusions of law, and Order.

## I. *Summary Conclusion and Order*

For the reasons stated below, the Court finds and concludes that B & F and Mr. Fairshter shall (1) be denied all prepetition legal fees, including $284,664.48 disclosed on their proof of claim and (2) account for and disgorge all fees paid to B & F and Mr. Fairshter by Debtor and/or Tagert Lakes Holdings, LLC or any of the Debtor's or Tagert Lakes Holdings, LLC's respective businesses, agents, or representatives during the course of Mr. Fairshter and B & F's representation of the Debtor, prepetition and postpetition.

The Court's disallowance and order directing disgorgement of *all* fees of B & F and Mr. Fairshter in the estimated amount of $500,664.48 (subject to further accounting)[2] is a result of B & F's and Mr. Fairshter's:

(1) failure to become employed pursuant to section 327 of the Bankruptcy Code, yet continuing to represent the Debtor and charge and bill significant fees against the Debtor;

(2) furtive taking of an attorney's lien, postconfirmation, on proceeds of property subject to the Debtor's Plan and in violation of that Plan;

(3) surreptitious violation of the Debtor's Plan and secret preempting, or priming, of other creditors' distributions under the Plan;

(4) unprofessional conduct in derogation of their client's best interests while advancing their own interests by objecting to the Debtor's "global settlement" with Debtor's primary creditor, Stinky Love, Inc. ("SLI"), and

(5) failure to consult with or notify Debtor's bankruptcy counsel of B & F's and Mr. Fairshter's conduct and thereby creating a conflict of interest with, and adverse consequences to, the Debtor.

## II. *Background*

### A. The Failure of the Movie "Love Stinks" and Ensuing Litigation

Nesbit Lee Lacy ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code on November 1, 2000. The Debtor's bankruptcy case was precipitated, in large measure, by financial problems emanating from the production and distribution of a movie entitled "Love Stinks." The movie was a box office failure and because of certain contracts entered into to produce the movie and investments made to produce and distribute the movie, the Debtor became embroiled in litigation against SLI (the lawsuit shall herein after be referred to as "SLI Suit").

The SLI Suit resulted in an initial ruling being entered in California state court against the Debtor immediately prior to his Chapter 11 bankruptcy filing ("SLI Judgment"). The SLI Judgment was affirmed by the California Court of Appeals. Eventually, this Court approved a stipulation between the Debtor and SLI to set

---

**2.** This sum is estimated by adding the sum of $284,664.48 in prepetition fees and $216,000.00 in postpetition fees.

the amount of SLI's unsecured claim at $6.26 million.

## B. Debtor's Bankruptcy Case Pre-confirmation

At the time of Debtor's bankruptcy filing he owned substantial assets, including a 100% interest in Tagert Lakes Holding, LLC ("Tagert Lakes"). Tagert Lakes, in turn, owned 117 acres of prime real estate located just outside of Aspen, Colorado, known as Tagert Lakes Ranch. The only lien against Tagert Lakes Ranch was held by Old Standard Life Insurance Company ("Old Standard") in the amount of approximately $6.9 million.

During the course of Debtor's bankruptcy case, this Court granted SLI relief from the automatic stay to respond and proceed with Debtor's appeal of the SLI Judgment in the California state court system (Docket # 108). Mr. Fairshter and his firm had been counsel for the Debtor prepetition. Nonetheless, Mr. Fairshter continued to represent the Debtor in the SLI Suit post-petition. On July 20, 2001, the Debtor sought to employ Mr. Fairshter as special counsel for the Debtor to represent his interest in the SLI Suit (Docket # 161).[3] Thereafter, on August 9, 2001, SLI objected to Mr. Fairshter's employment (Docket # 169). The United States Trustee followed with his own objection filed on August 13, 2001 (Docket # 170). The objections were, in part, based on the fact that Mr. Fairshter's firm, B & F, filed a proof of claim in the Debtor's case indicating that it held a claim in the amount of $284,664.48 for its prepetition legal services in the SLI Suit. The Debtor did not further seek to pursue employment of Mr.

Fairshter and, thus, this Court never approved Mr. Fairshter's employment by the Debtor in this case, or otherwise.

## C. Confirmation, Conversion, Re-Conversion

On September 17, 2001, this Court confirmed the Debtor's Chapter 11 Amended Plan ("Plan") (Docket # 179). The Plan provided that the Debtor retain certain assets, including his interest in Tagert Lakes. In addition, unsecured creditors— including SLI and B & F—were to be paid in full, plus interest, within two years of the Plan's effective date. Two points of key importance to this Court's ruling: (1) paragraph 9.8 of the Plan provided that the Debtor would not encumber, sell, transfer or dispose of any property in which he held an interest until the unsecured claims were paid in full, and (2) the Disclosure Statement provided that B & F's class 7(b) unsecured claim was $150,000.00.

Funding of the Plan, in part, was to come from the net proceeds of Tagert Lakes Ranch. It was anticipated that the Tagert Lakes Ranch would be sold for between $10 and $11.5 million. It was further anticipated that this would net proceeds for Plan distribution in the range of $3 to $4 million.

Tagert Lakes Ranch sold for $13 million. Old Standard was paid approximately $11 million from the sale proceeds for its lien claim. Debtor asserts that, at the closing, this payment was made under protest because Old Standard's claim should have been not greater than $9 million. After the sale, and for reasons not relevant to the issue here, it turned out that just over

---

**3.** In this District, an individual, not a firm, enters an appearance in a case. D.C.Colo. Lcr.R. 57.5(B) provides:

> An attorney's entry of appearance by signing a pleading, motion or other paper does not constitute entry of appearance by that attorney's firm.

Thus, employment applications in bankruptcy cases seek to employ specific attorney and not an entire named firm.

$100,000 was available for Plan distribution.[4]

Because SLI received no distribution under the confirmed Plan after approximately two years, it moved to reopen the Debtor's Chapter 11 case to enforce the terms of the Plan. This Court granted that Motion and this Court further granted SLI's Motion to Convert this case to Chapter 7 on August 21, 2003 ("Conversion Order") (Docket # 259).[5] On January 2, 2004, the United States District Court for the District of Colorado reversed the Conversion Order, and the case was reconverted to Chapter 11.[6]

### D. B & F's Postpetition Activities

Unbeknownst to this Court, after the Conversion Order was reversed by the District Court and while the Chapter 11 case was still open, the Debtor and Tagert Lakes entered into a retainer agreement ("Retainer Agreement") with B & F. This Retainer Agreement was signed by Debtor in his personal capacity and as Managing Member of Tagert Lakes. In addition, Robert Unger, another attorney in the

Debtor's arsenal,[7] signed the Retainer Agreement approving same as to form and content. The Retainer Agreement provided that B & F would represent the Debtor and Tagert Lakes on a contingency basis to sue Old Standard to recover amounts that were allegedly overpaid from the sale of Tagert Lakes Ranch. The Retainer Agreement was dated May 4, 2004. No application to employ B & F was filed and no notice of the Retainer Agreement or employment of B & F was given to the Court, creditors, and parties-in-interest in the within case.

The Retainer Agreement granted B & F a lien against all of the Debtor's property, including any recovery in the litigation, to secure payment of three different types of fees: (1) the prepetition fee claim incurred in the SLI Suit in the sum of $284,664.48 ("Prepetition Fees");[8] (2) fees in the amount of $216,000.000 that were claimed for postpetition, preconfirmation services provided in the SLI Suit ("Postpetition Fees"); and (3) any postconfirmation fees incurred in bringing suit against Old Standard ("Old Standard Fees").[9]

4. SLI alleges that proceeds from the sale were, contrary to the Plan provisions, surreptitiously diverted by the Debtor from SLI to the Debtor's own investment account.

5. This opinion is published as: *In re Lacy*, 297 B.R. 786 (Bankr.D.Colo.2003).

6. This opinion is published as: *In re Lacy*, 304 B.R. 439 (D.Colo.2004).

7. Mr. Unger, this Court would note, was also not authorized by this Court to be employed by the Debtor.

8. These are the same fees provided for in the Plan.

9. The Retainer Agreement specifically provided:

You hereby grant Bennett and Fairshter, LLP, a security interest and lien against (i) any chose in action or cause of action which

You may have or may hereafter acquire, (ii) any interest You may hereafter acquire in any property (whether personal, tangible or intangible), (iii) any claim or cause of action with respect to which we may represent You, or in connection with which we may render legal advice or service, (iv) the fruits and proceeds of any judgment, settlement or other disposition of this or any other matter wherein we represent You; and (v) any amounts remaining in your Trust Deposit at the conclusion of our participation in this or any other mater [sic] in which we represent You, all as security for, and for application to, any amounts payable under or pursuant to this Agreement, whether or not any such amount has yet been billed to You, or any demand made for payment thereof. *Such security interest and lien shall be deemed also to secure the principal and interest on all sums which may be awarded or become payable (including costs and attorney's fees) in any litigation or other judicial or quasi judicial proceeding brought for*

On behalf of the Debtor, Mr. Fairshter filed a Complaint against Old Standard in November 2004, in the United States District Court for the District of Colorado. The case was captioned: *N. Lee Lacy, et al. v. Old Standard Life Insurance, Inc.; Metwest Mortgage Services, Inc.; Old West Annuity and Life Insurance Company,* et al., Civil Action No. 04–EN–2351 ("Old Standard Litigation").

SLI first learned that the Debtor had filed the Old Standard Litigation in early 2005. Soon thereafter, SLI moved for an Order of this Court to implement the Plan ("Motion to Implement"). SLI, by the Motion to Implement, sought this Court's Order requiring that any proceeds from the Old Standard Litigation be paid solely into the registry of the Court for distribution to Plan creditors in accordance with 11 U.S.C. § 1142. The Debtor and B & F, each, independently, objected to the Motion to Implement.[10] B & F's objection was premised on the argument that the relief sought in the Motion to Implement was inappropriate because it would interfere with payment of its Prepetition Fees,

Postpetition Fees, and Old Standard Fees. In so objecting, B & F attached a copy of the Retainer agreement, thereby *disclosing, for the first time, to this Court,* the existence of the Retainer Agreement and the claim of a lien by B & F.

On May 12, 2005, over Debtor's and B & F's objections, the Court entered its Preliminary Order Implementing Plan Re: Old Standard Litigation Proceeds (Docket # 734). The Court entered its Final Order on July 26, 2005, granting SLI's Motion to Implement and denying B & F's objection and its claims to all of the Postpetition Fees (Docket # 810 and Docket # 812). B & F appealed this Court's Order to the Tenth Circuit Bankruptcy Appellate Panel ("BAP"). The BAP affirmed this Court's Order on January 6, 2006 ("BAP Opinion").[11]

In the midst of the contest with respect to the implementation of the Plan, B & F surreptitiously—at least as to this Court and SLI—filed a Notice of Lien on June 8, 2005, in the United States District Court for the District of Colorado.

---

the purpose of enforcing this Agreement, or otherwise to recover payment for services rendered, expenses incurred, or disbursements made on Your behalf. It is also agreed that said security interest and lien also secures the payment of the $284,664.48 in the permitted and agreed Bankruptcy Claim pursuant to the amended Plan of Reorganization, and the adjusted and agreed amount of $216, 000.00 in currently outstanding fees and costs incurred on your behalf since November 1, 2000, and which you have re-affirmed such fees, costs, and debt. You understand and agree that property on which a security interest and/or lien is given to secure payment of a debt or obligation may be applied, or sold and the proceeds applied, to payment of a debt or obligation thereby secured, if you do not fully and timely perform your promise to pay that debt or obligation. You understand and agree that B & F has agreed to undertake this representation in reliance upon all of the agreements set forth in this paragraph.

(Emphasis added).

10. From a review of the docketed objections, it would appear that Docket # 764 and Docket # 765 both were filed by the Debtor; Docket # 764 filed by authorized bankruptcy counsel, Lee Kutner, and Docket # 765 filed by unauthorized putative "special counsel" B & F, by Mr. Fairshter. Upon closer examination, Docket # 765 was an objection, not by the Debtor, but by B & F, *only,* and accompanied by an affidavit of Mr. Fairshter and a copy of the purported lien held by B & F. The objection presents no opposition to the Motion to Implement actually interposed by the Debtor.

11. *In re Lacy,* 335 B.R. 729 (10th Cir. BAP 2006). As stated previously, because of the rather complete and clear explication of events and acts relevant to this decision articulated in the BAP Opinion, this Court adopts and incorporates in its entirety that decision herein.

After years of litigation and after five years into this bankruptcy case, the Debtor and SLI finally entered into a global settlement agreement resolving all outstanding issues between the Debtor and SLI ("Settlement Agreement"). This was filed, together with a Motion to Approve same, on November 23, 2005 (Docket # 860). Notice pursuant to Local Rule 202 accompanied the Motion to Approve the Settlement Agreement and set December 16, 2005 as a response deadline (Docket # 861 and Docket # 862 (Amended Notice)).

On December 19, 2005, three days after the response deadline, B & F filed an objection, as a creditor, upon its own account, to Debtor's Settlement Agreement (Docket # 866). On December 21, 2005, B & F filed a Motion to Allow Late Filing of its objection alleging excusable neglect—blaming, to a greater or lesser degree, the error on a paralegal and calendar issues (Docket # 868).

On February 21, 2006, Debtor's Settlement Agreement came on for a contested hearing. In anticipation of the contested hearing, the Court and parties expended time preparing for the contested hearing. Evidently, on the morning of February 21, 2006, B & F faxed a Notice of Withdrawal of its objection to Debtor's counsel, Mr. Lee Kutner. The Court and counsel for SLI were not given notification of the withdrawal until the beginning of the hearing. On February 21, 2006, this Court entered its Order Approving the Settlement Agreement and made the following findings on the record, as reflected in the Minutes of Proceeding.

*For the reasons more fully stated on the record in open court, the Court made findings and conclusions on the record based on the conduct of B & F in these proceedings.* The essential findings and conclusions are summarized in these minutes of proceeding.

The Court will set a show cause hearing directing B & F to show cause why sanctions should not be imposed on B & F in the form of the attorneys' fees expended by Mr. Williams and Mr. Kutner in preparing for this hearing and dealing with the Motion to Allow Late Filing of B & F's Objection to the Settlement and the Objection to Settlement. The Court will also consider, at the show cause hearing, whether other sanctions may be appropriate as well. The Court found and concluded:

1. The Court adopts and incorporates the entire Tenth Circuit BAP Opinion entered on January 6, 2006 in *Bennett & Fairshter, LLP v. Stinky Love, Inc. (In re Nesbit Lee Lacy)*, 335 B.R. 729 (10th Cir. BAP 2006).

2. The Court adopts and incorporates—with the exception of the statements regarding the pending appeal, which has been ruled on—the factual recital set forth in Stinky Love, Inc.'s Objection to Motion to Allow Late Filing filed on December 28, 2005 (Docket # 869).

3. The Court finds and concludes that B & F has acted irresponsibly, recklessly, unprofessionally, and with great neglect, as is fully set forth in the BAP Opinion. B & F was retained by the Debtor post-petition and post-confirmation and in the face of a confirmed Plan. In contravention and in violation of the terms of the Plan, B & F purportedly took a lien against all of the Debtor's property. B & F did so to secure (a) pre-petition legal fees and (b) post-petition pre confirmation legal fees, with no proper employment under 11 U.S.C. § 327, and (c) post-confirmation legal fees. B & F did so without notice to anyone—that is, the

Court, creditors, SLI, and, to a greater or lesser degree, even Debtor's bankruptcy counsel, Mr. Kutner. In so taking a lien, B & F violated the Plan and, in effect, attempted to defeat the terms of the confirmed Plan or otherwise thwart its implementation. B & F acted with full knowledge of the Plan and purposely to attempt to take a lien and do so in a completely invisible, deceptive fashion.

4. The not-yet-filed Withdrawal of the Objection at the 11th hour together with B & F's failure to appear at the hearing wasted Court resources and time and needlessly required the incurring of attorneys' fees for Mr. Lacy and for Stinky Love, Inc.

5. Mr. Williams and Mr. Kutner may apply for attorneys' fees and costs, as a sanction, on or before March 10, 2006. The Court will further, by separate Order, set a Show Cause Hearing.

6. B & F shall also show cause why this Court should not refer this matter to the appropriate California disciplinary authority for further action.

(Docket # 877).

### E. The March 8, 2006 Order to Show Cause

On March 8, 2006, this Court entered its formal Order requiring B & F to appear on May 9, 2006, to show cause, if any, why sanctions should not be entered against it: (1) for its actions in secretly obtaining a security interest in the Debtor's property to secure B & F's prepetition unsecured claim; (2) for objecting to Debtor's Settlement Agreement with SLI while simultaneously acting as Debtor's counsel and as a creditor of the Debtor; and (3) for other actions by which B & F violated the Plan and attempted to defeat and thwart its terms ("Show Cause Order") (Docket # 884).

On May 8, 2006, *two months after entry of the Show Cause Order,* B & F filed, by way of a local attorney service, its *fax copy* of the Opposition to this Court's Order to Show Cause. The original was subsequently filed on May 9, 2006, the date set for the hearing. The Opposition asserts that: (1) the time to file a written response, set for March 10, 2006, was unreasonable; (2) sanctions are not appropriate because it should not be implicated in any of the Debtor's wrongdoing; (3) sanctions under FED.R.BANKR.P. 9011 are not appropriate for procedural reasons; (4) the Court does not have the ability to sanction under its inherent authority; and (5) referral to the California State Bar is not appropriate.

At the hearing on May 9, 2006, the Court heard statements from counsel for SLI, the Debtor, and B & F. Both the Debtor and SLI, by their counsel present, stated that they would not be pursuing attorneys' fees and costs as a sanction. Mr. Fairshter was sworn and testified under oath. The Court finds that Mr. Fairshter's testimony was not credible, was internally inconsistent, and contradicted statements made by Debtor's bankruptcy counsel, Mr. Kutner. At the conclusion of the hearing, the Court advised the parties that it was taking the matter under advisement and that it would be rendering a written opinion.

### F. Pleadings filed by B & F After the May 9, 2006 Hearing

Seemingly unabated by this Court's concerns enunciated in Court Orders prior to the May 9, 2006 hearing and statements made to counsel on the record in open court, during the May 9, 2006 hearing, B & F has filed further pleadings of concern.

On May 12, 2006, SLI filed a Complaint for Subordination of B & F's Class 7(b) Claim.[12] In response thereto, on June 22, 2006, B & F filed a Motion to Dismiss the Complaint. While this Court makes no final determination, at this time, with respect to the Motion to Dismiss, it appears that the misconduct of Mr. Fairshter and B & F, addressed below, continues. First, it appears that B & F contends that because their "attempts" to secure a lien postconfirmation were not successful there was no harm here and no "inequitable conduct." This argument is nonsensical. If a bank robber tried to rob a bank, but was not successful, then, was no crime committed?

Second, B & F asserts that: "the confirmation is binding on the Debtor and all creditors pursuant to 11 U.S.C. § 1327(a)."[13] B & F seems to want it both ways: (1) get a postconfirmation lien for the Prepetition Fees, Postpetition Fees, and Old Standard Fees in complete contravention of the Plan and (2) bind all parties (evidently, except B & F) to the Plan.

B & F also filed an Opposition and Objection to SLI's Motion to Approve Initial Distribution to Class 7(B) Unsecured Creditors (Docket # 900). SLI's Motion seeks to make a distribution to two of the remaining unsecured creditors: SLI and Fotokem. The Motion further seeks to reserve funds to pay the claim of B & F in its entirety pending resolution of the adversary proceeding *Stinky Love, Inc. v. Bennett & Fairshter, LLP (In re Lacy),*

Adversary Proceeding No. 06–01578–SBB. B & F's Objection to the Motion seeks to, in a nutshell, direct that its full claim of $284,664.48 be paid now, regardless of the outcome in the adversary proceeding.

B & F's recently filed pleadings reinforce the Court's conclusions below that it is deliberately delaying and improperly hindering completion of the Debtor's Plan.

## III. *Discussion*

### A. *Reasonableness of the Show Cause Order*

■ B & F contends that the Court's Show Cause Order was unreasonable because compliance with it would be impossible because the Order, entered on March 8, 2006, required B & F to appear at the show cause hearing on May 9, 2006, but that a response was due on *March* 10, 2006. While this appears to be an obvious scrivener's error in this Court's Order,[14] B & F could have filed an appropriate pleading shortly after the receipt of the Show Cause Order. Instead it chose to file a response two months later—one day before the May 9, 2006 hearing—and improperly (the pleading was filed by fax, which is contrary to local rules). The Court finds the argument of B & F to be without merit.

### B. *Rule 9011*

B & F asserts that sanctions are not appropriate under FED.R.BANKR.P. 9011. This Court agrees. B & F is correct in asserting that Rule 9011 does not proce-

---

**12.** *Stinky Love, Inc. v. Bennett & Fairshter, LLP (In re Lacy),* Adversary Proceeding No. 06–01578–SBB.

**13.** Counsel for B & F seems to mix reference here to Chapter 13. The citation does not appear to be a typographical error, however, as this provision addresses the effect of confirmation in the *Chapter 13* context.

**14.** Counsel for SLI prepared a proposed Order for the Court's signature in accordance with the Court's comments stated on the record in open court and as outlined in the Minutes of Proceeding. Evidently, the Order did not enter until a few days before the deadline set forth therein.

durally apply in this context. However, Rule 9011 *does not* form a basis for the sanctions to be issued by this Court in this instance.

For the purpose of discussion, Rule 9011(b) of the Federal Rules of Bankruptcy Procedure provides:

> By presenting to the court ... a petition, pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [15]

■ While this Court believes that B & F's (1) objection to the Motion to Implement, (2) objection to the Settlement Agreement, and (3) Opposition to Order to Show Cause were wholly without merit, the conduct evades sanctions under Rule 9011. Rule 9011, as it been amended through the years, has become rather ineffective. For a court to issue sanctions under Rule 9011 on its own initiative, "the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm or party to show cause why it has not violated subdivision (b) with respect thereto." [16] Moreover, the Court may not award monetary sanctions before volun-tary dismissal or settlement of the claims made by or against the party.[17] Here, Rule 9011 cannot be a basis for sanctions.

## C. 11 U.S.C. § 105 Does Provide a Basis for Sanctions

### 1. *Summary of this Court's Inherent Powers*

■ A bankruptcy court's inherent powers, derived from 11 U.S.C. § 105(a), must be used with restraint.[18] Nevertheless, a federal court's inherent power to sanction is well established.[19]

"The Tenth Circuit has recognized that section 105(a) is intended to empower bankruptcy courts with the inherent powers imbued in the federal district court to sanction conduct abusive of judicial process." [20] In particular, section 105(a) provides that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, this Court can take any action or make any determination "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." [21]

Moreover, in *Chambers v. NASCO*, the Supreme Court, in rejecting arguments that specific federal statutes and the various sanctions provisions of the federal rules reflect legislative intent to displace the inherent powers, stated:

> when there is bad-faith conduct in the court of litigation that could be adequately sanctioned under the Rules, the

---

15. FED.R.BANKR.P. 9011(b).

16. FED.R.BANKR.P. 9011(c)(1)(B).

17. FED.R.BANKR.P. 9011(c)(2)(B).

18. *See Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir.1993).

19. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

20. *Providian Nat'l Bank v. Vitt (In re Vitt)*, 250 B.R. 711, 723 (Bankr.D.Colo.2000), *aff'd*, 269 B.R. 232 (D.Colo.2001) (citing *In re Courtesy Inns*, 40 F.3d 1084, 1089 (10th Cir.1994); *In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990)).

21. 11 U.S.C. § 105(a).

court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.[22]

This Court concluded in the Show Cause Order, entered on March 8, 2006, that:

B & F has acted irresponsibly, recklessly, unprofessionally and with great neglect, as is fully set forth in the BAP Opinion. Specifically, B & F was retained by Debtor post-petition and post-confirmation and in the face of a confirmed Plan. In contravention and in violation of the terms of the Plan, B & F purportedly took a lien against all of Debtor's property. B & F did so to secure (a) pre-petition legal fees; (b) post-petition, pre-confirmation legal fees, with no proper employment under 11 U.S.C. § 327; and (c) post-confirmation legal fees. B & F did so without notice to anyone, including this Court, creditors, SLI and Debtor's bankruptcy counsel. By their actions in taking such lien, B & F violated the Plan and, in effect, attempted to defeat the terms of the confirmed Plan or otherwise thwart its implementation. B & F acted with full knowledge of the Plan and purposely to attempt ... to take a lien and to do so in a completely invisible, deceptive fashion.

. . .

The unfiled fax Withdrawal of the B & F Objection tendered to the Court upon the commencement of the hearing on SLI's Motion to Approve Lacy Settlement Agreement, together with B & F's failure to appear at the hearing resulted in the waste of Court resources and time and needlessly required SLI and Debtor to incur attorney's fees in anticipation of contested hearings upon the B & F Objections to Motion to Approve Lacy Settlement Agreement and upon B & F's Motion to Allow Late Filing of Objections.

■ After conducting the hearing on May 9, 2006, and after taking the testimony of Mr. Fairshter, the Court, by this Order, reiterates the same conclusions noted in its March 8, 2006 Order and finds that sanctions are appropriate under 11 U.S.C. § 105 because of: (1) B & F's attempt to covertly circumvent the requirements of 11 U.S.C. § 327, 328, 329 and FED.R.BANKR.P. 2014 and 2016; (2) B & F's secret lien on Debtor's property subject to the Plan and in direct violation of the Debtor's Plan; and (3) B & F's filing of a frivolous late-filed objection to the Settlement Agreement and procedurally improper withdrawal.

### 2. *B & F's Circumvention of 11 U.S.C. § 327, 328, 329 and FED.R.BANKR.P. 2014 and 2016*

Debtor, early in this case, sought to employ B & F to assist it in the SLI Suit. After objections were lodged, the Debtor did not further pursue formal employment, with Court approval. Instead, he employed B & F without court approval or any oversight and B & F continued to assist the Debtor under the Court's "radar."

11 U.S.C. § 327 provides, in part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are not disinterested persons, to represent or

---

**22.** 501 U.S. at 50, 111 S.Ct. at 2135.

assist the trustee in carrying out the trustee's duties under this title.

. . . .

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

B & F represented an interest that was adverse to the interest of the estate. It held an unsecured claim for prepetition work in the sum of $284,664.48. It has not waived this fee; in fact, it appears that they have aggressively pursued avenues to collect this fee, preconfirmation and postconfirmation.

11 U.S.C. § 329(a) requires that:

Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in

contemplation of or in connection with the case by such attorney, and the source of such compensation.

Here, B & F has filed a proof of claim for the prepetition work, but it has left this Court, creditors, and parties in interest in the dark on its attempt to convert this unsecured claim to a secured claim and with respect to any information on compensation "agreed to be paid." While it has disclosed the existence of the prepetition unsecured claim in the application to be employed and the same is disclosed by the Debtor in its Plan and Disclosure Statement, it appears that B & F has proceeded postconfirmation in a manner that it could not proceed while this case was pending, in contravention of the spirit of section 329(a) and FED.R.BANKR.P. 2014.[23]

██ This Court has the ability to enter orders limiting or denying compensation to an attorney for failure to comply with the Bankruptcy Code and Rules.[24] Here, there is no compliance with the Bankruptcy Code and Rules by B & F. As noted in *In re Bartmann,*

"The process of review [of attorneys' prepetition transaction with a debtor] is absolutely dependent upon full, complete and absolute compliance with the

---

**23.** *See* Appendix A for the full text of FED. R.BANKR.P. 2014.

**24.** 11 U.S.C. § 328(a) provides that a debtor, *with the court's approval,*

may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been

improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. *See also,* FED.R.BANKR.P. 2016, attached hereto as Appendix B. *See also, e.g., In re Land,* 116 B.R. 798 (D.Colo.1990), *aff'd and remanded,* 943 F.2d 1265 (10 th Cir.1991) (return of compensation to the Chapter 11 debtors where the debtors and attorney failed to obtain bankruptcy court's approval of attorney's *nunc pro tunc* employment) and *In re Vann,* 128 B.R. 285, *aff'd,* 986 F.2d 1431 (10th Cir. 1993) (failure of counsel to comply with Bankruptcy Rules provides justification for denying attorney fees).

disclosure requirements by a debtor's attorney ... When an attorney unilaterally elects to conceal the existence of payments that might otherwise be subjected to examination by creditors and the court, the entire compensation review process is derailed and public confidence in the system is damaged." Thus, in addition to denying or terminating the employment of counsel guilty of failing to make required disclosures of connections, adverse interest, potential conflicts, and fee agreements and compensation, courts have also ordered disgorgement of undisclosed fees and retainers. "The fact that the fee may or may not have been reasonable or have been earned does not justify a disregard for the rules of disclosure." [25]

■ The Court has previously disallowed B & F's *Post*petition Fees claim in its entirety and this ruling was affirmed by the BAP.[26] This Court has not, however, ruled with respect to the *Pre* petition Fees claimed in the amount of $284,664.48.[27] The Court believes that, in accordance with 11 U.S.C. § 105(a) and *Bartmann,* the Prepetition Fees must be dealt with because of B & F's total disregard for the disclosure requirements of the Code and lack of candor to this Court and creditors. Further, B & F's furtively taking a post-confirmation priming lien on the proceeds from disposition of Plan property—and thereby secretly subordinating other creditors' claims and thwarting the terms and intent of the confirmed—Plan—is inexcusable and highly improper. Consequently, the Court will enter an Order—in the nature of sanctions—disallowing any claim of B & F for prepetition services, including but not limited to the referenced $284,664.48.[28] In addition, the Court will Order B & F to provide an accounting to the Court of all sums paid to it by the Debtor and B & F shall disgorge any and all sums paid to it by the Debtor. The sums disgorged, if any, shall be paid to the estate for distribution to unsecured creditors.

### D. Referral to the Committee on Conduct for the United States District Court for the District of Colorado and the State Bar of California[29]

#### 1. *Overview*

■ SLI, in its Opposition to this Court's Order to Show Cause states:

It should be noted that a violation of the conflict of interest rules does not mean that an attorney is subject to discipline. Such depends on the circumstances involved. As such, it would be necessary for Bennett & Fairshter, LLP

---

**25.** 320 B.R. 725 (Bankr.N.D.Okla.2004) (citations omitted).

**26.** *In re Lacy,* 335 B.R. 729, 739 (10th Cir. BAP 2006).

**27.** By separate adversary proceeding, SLI has sought to subordinate the claim of B & F and to limit the amount of the claim to $150,000.00, as represented in the Debtor's Plan and Disclosure Statement. *See, Stinky Love, Inc. v. Bennett & Fairshter, LLP (In re Lacy),* Adversary Proceeding No. 06–01578–SBB.

**28.** The Court may, in accord with *Bartmann,* disallow *all* prepetition fees if they were *not*

disclosed. *Bartmann,* 320 B.R. at 750 n. 20. Here, the prepetition fees were initially disclosed, reduced by the Plan, and then reinstated without disclosure to the Court and creditors (and, it appears, Debtor's own bankruptcy counsel). Thus, the nondisclosed amount is any sum above $150,000.00.

**29.** The Court makes the following preliminary findings with respect to B & F's conduct. Final determination with respect to applicable rules of professional conduct should be made by the state and federal disciplinary authorities.

to be apprised of the specific issues of concern to the Court in order to appropriately respond.

Mr. Lacy has made no complaint that an adverse interest, constituting a conflict of interest, has occurred in this matter.[30]

The conflict of interest here presents a serious and consequential problem *based upon the circumstances involved in this case.* The Plan expressly provided that "[n]otwithstanding confirmation of the Plan, the Court shall retain jurisdiction" to determine the allowance of claims, implement the Plan, and to enter Orders in aid of consummation of the Plan.[31] Moreover, paragraph 9.9 of the Plan provided that the Debtor not encumber, sell, transfer or dispose of any property in which he held an interest until unsecured claims were paid in full. Here, the Retainer Agreement makes it clear that B & F was aware of the Plan and its provisions by direct reference to the Plan therein. Debtor and B & F consequently, had an obligation to inform this Court, creditors, parties in interest, and Debtor's own bankruptcy counsel, of this Retainer Agreement and more importantly the fee and lien arrangement in derogation of the Plan provisions.

This Court is reminded of another case that began as a bankruptcy matter and ended up before the Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado in the case styled: *People v. Kindsfather.*[32] This Court dealt with various bankruptcy cases (under Chapters 7 and 13) wherein debtors' counsel took liens on various debtors' property to secure his fee in bankruptcy.[33] The liens were not disclosed in the bankruptcy cases and this Court found that the attorney had violated Colo.Rules Of Prof'l Conduct R. 1.7(b) and 1.8(a).[34] The Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado concurred and also found violations of Colo.Rules Of Prof'l Conduct R. 1.8(j), 3.3(a)(2), 3.4(c) and 8.4(c) and (d).[35] In so concluding, the Supreme Court of Colorado confirmed that "[b]y taking an interest in property belonging to his clients that was subject to bankruptcy proceedings, respondent engaged in a conflict of interest and in other deceptive practices."

B & F's taking of a lien in all of the Debtor's assets as part of its Retainer Agreement, in derogation of and to the detriment of the Debtor's Plan, Debtor's creditors, and the proceedings before this Court, and evading the obligation to disclose the same to this Court, crosses the line of appropriate conduct and results in a conflict of interest and other deceptive practices, not unlike the *Kindsfather* case.

Further, the fact that Mr. Fairshter and B & F served as counsel to and represented the Debtor (and Tagert Lakes) in state court litigation while concurrently opposing and objecting to the Debtor's "global settlement" with its principal creditor, SLI, creates a conflict of interest. B & F was attempting to defeat and delay its own client's (Lacy, the Debtor) Settlement Agreement, while simultaneously (a) pur-

---

**30.** Opposition to Order to Show Cause at 7.

**31.** Plan at ¶¶ 11.2.1, 11.2.2, and 11.2.4.

**32.** 2004 WL 834489 (Colo. Apr. 2, 2004)

**33.** *In re Cohagan–Deubel,* 2002 WL 1046715 (Bankr.D.Colo.2002).

**34.** *Id.* at * 17. The Court references the Colorado Rules of Professional Conduct herein as the conduct in question takes place before this Court. For the convenience of parties and reviewing courts, parallel citations to the California Rules of Professional Conduct are set forth in the Appendices hereto.

**35.** *Id.* at *1.

suing the Debtor's claim(s) in state court and (b) preserving its own ill-gotten lien and fee arrangement covertly acquired postconfirmation.

### 2. Colo.Rules of Prof'l Conduct R 1.7

Pursuant to Colo.Rules of Prof'l Conduct R 1.7, a "lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." In the context of employment by a debtor-in-possession in a pending Chapter 11 case, the question of who or what is an attorney's client is a bit more complex and more restrictive than in the ordinary sense of attorney-client.[36] Employment is scrutinized under 11 U.S.C. § 327 and 329 and Fed.R.Bankr.P. 2014 and 2016. Once employed, counsel is subject to stringent fee scrutiny in accordance with 11 U.S.C. § 330. In effect, Mr. Fairshter abandoned the more important requirements of the Bankruptcy Code and Rules and awaited confirmation of this Debtor's case so as to seize his Prepetition Fees, Postpetition Fees, and Old Standard Fees, and recoup more in the Old Standard Litigation, all without notice or the scrutiny of this Court, creditors, and even Debtor's bankruptcy counsel.

That being said, Mr. Fairshter continues to have obligations imposed upon him by the Rules of Professional Conduct. Here, Mr. Fairshter seemingly has multiple violations of Colo.Rules Of Prof'l Conduct R. 1.7. First, he represents the Debtor in state court litigation and B & F, as well, a creditor of the Debtor.[37] Second, the Retainer Agreement reflects that he represents Tagert Lakes and Debtor, both of whom are subject to Plan provisions. The conflict arises because Tagert Lakes, at least at one time, had a secured claim in the Tagert Lakes Ranch.[38] While the interests of Debtor and Tagert Lakes may coincide in pursuing the Old Standard Litigation, there is a conflict for the reason that Tagert Lakes is a creditor of this Debtor and the Tagert Lakes Ranch is subject to the terms of the confirmed Plan.[39]

### 3. Colo.Rules of Prof'l Conduct R. 1.8

Under the Colorado Rules of Professional Conduct, certain transactions are prohibited as they present a conflict of interest for the attorney in the attorney-client relationship.[40] Here, again, B & F is an unsecured creditor of this Debtor. In effect, by taking the liens on all of the Debtor's property, B & F is directly violating the Debtor's Plan and acting to the disadvantage of Debtor and Debtor's obligations under the Plan. This conduct is aggressive and, it would appear, inappropriate.

### 4. Colo.Rules of Prof'l Conduct R. 3.3

Mr. Fairshter and B & F may have violated Colo.Rules of Prof'l Conduct R. 3.3(a)(2) in failing to adequately and fully disclose "a material fact"—the existence of the Retainer Agreement and the conver-

---

**36.** *People v. Henderson,* 967 P.2d 1038, 1040 (Colo.1998) (Colorado Supreme Court held that representing a client in bankruptcy while having an interest as a creditor was a violation of Colo.Rules Of Prof'l Conduct R. 1.7(b)).

**37.** *Id.*

**38.** *See* Third Amended Disclosure Statement at 29.

**39.** *People v. Kindsfather,* 2004 WL 834489, at * 1.

**40.** Colo.Rules of Prof'l Conduct R. 1.8. Rule 1.8 is attached hereto as Appendix D.

sion of an unsecured claim to a secured claim—to this Court and in these proceedings.[41] The knowing and deliberate concealment of a security interest to secure formerly unsecured prepetition fees in a sum greater than provided for in Debtor's Plan may constitute a perpetuation of fraud upon this Court and the unsecured creditors, including SLI.[42]

### 5. COLO.RULES OF PROF'L CONDUCT R. 3.4

B & F, in attempting to covertly trump other unsecured creditors—which, SLI being the dominant unsecured creditor—by attempting to convert an unsecured claim to a secured claim, appears to violate COLO. RULES OF PROF'L CONDUCT R. 3.4.[43]

### 6. COLO.RULES OF PROF'L CONDUCT R. 8.4

Finally, this Court concludes that because of Mr. Fairshter and B & F's evi-dent violations of COLO.RULES OF PROF'L CONDUCT R. 1.7, 1.8, 3.3 and 3.4, they, most likely, have violated COLO.RULES OF PROF'L CONDUCT R. 8.4 because they have participated in misconduct that discredits the legal profession.[44] An example, among others, was Mr. Fairshter's testimony during the hearing on May 9, 2006, wherein he testified that he had conferred with Debtor's counsel, Lee Kutner, *prior* to the filing of B & F's objection to the Settlement Agreement. Thus, Mr. Fairshter's testimony would seem to indicate that Debtor's counsel acted in concert with B & F in objecting to the Settlement Agreement.

However, Mr. Kutner stated that he did not recall discussing with B & F the objection to the Settlement Agreement until *after* the filing of B & F's objection to the Settlement Agreement.[45] The Court ob-

---

**41.** COLO.RULES OF PROF'L CONDUCT R. 3.3 is attached hereto as Appendix E.

**42.** Seemingly, Mr. Fairshter seems to place much of the blame on the Debtor, here, by asserting that the Debtor consented to this arrangement. Moreover, B & F asserts in its Opposition to this Court's Order to Show Cause, that it has not been involved in the long history of conduct in this case. In support of this, B & F cites to footnote 6 of the BAP Opinion wherein the Court stated: "By including these findings, the Court in no way implicates [B & F] in the debtor's alleged wrongdoing." *In re Lacy*, 335 B.R. at 735 n. 6. Indeed, Debtor has been an architect of schemes and gamesmanship. That, does not, however, negate the role and culpability of B & F.

**43.** COLO.RULES OF PROF'L CONDUCT R. 3.3 is attached hereto as Appendix E.

**44.** Colo.Rules of Prof'l Conduct R. 8.4 is attached hereto as Exhibit G.

Although B & F's web page does not form a basis for this decision, the Court notes that B & F, on its own website claims:

> You Won't Find a Tougher Firm Than Bennett & Fairshter.

> We believe the practice of law is a full contact sport.
>
> . . .
>
> The competitive legal environment we thrive in at Bennett & Fairshter calls for aggressiveness, relentlessness and durability.
> With legal acumen and overpowering tenacity, we make deals happen for our clients
>
> . . . .
>
> If we represent you, we will never be worn down or out-maneuvered—the very idea is more than unacceptable; it is unthinkable. Appropriate aggressiveness is the hallmark of our approach to documentation processes, transaction negotiations, discovery processes and trial strategies.

http://www.bennfairlaw.com (last visited July 26, 2006). Statements like this, and conduct as presented in this case, give justification to surveys finding lawyers to have the same credibility of used car sales people.

**45.** Mr. Kutner did not speak, however, to whether the Debtor and B & F had conferred prior to the filing of the objection to the Settlement Agreement.

served Mr. Fairshter on the witness stand during this testimony and found him to be not credible, overall, and, specifically, with respect to the events surrounding the objection to the Settlement Agreement. Mr. Kutner, on the other hand, appeared surprised by this testimony and his statements on the record seemed truthful. Based upon this Court's observations at the hearing and the overall conduct of Mr. Fairshter in this case, this Court can only conclude that the intent of this testimony was to continue a deception upon this Court.[46]

### IV. *Order*

IT IS THEREFORE ORDERED as follows:

1. Any and all claims of Mr. Fairshter and his law firm, B & F, for prepetition services are DISALLOWED as a sanction against Mr. Fairshter and B & F. Mr. Fairshter and B & F shall provide an accounting to the Court of all sums paid to them by the Debtor for prepetition and postpetition fees (previously disallowed and sustained by the Tenth Circuit BAP) for services. Mr. Fairshter and B & F shall disgorge any sums paid to it by the Debtor and/or Tagert Lakes or any of the Debtor's or Tagert Lakes's respective businesses, agents, or representatives. The sums disgorged, if any, shall be paid to the Clerk of the U.S. Bankruptcy Court, District of Colorado and held for distribution pursuant to the Debtor's confirmed Plan or appropriate Court Order. Said accounting shall be submitted to the Court with copies to the Debtor, Debtor's bankruptcy counsel, and SLI's counsel, within twenty (20) days after the date of entry of this Order on the Court docket. Sums to be disgorged shall also be paid to the Clerk of the United States Bankruptcy Court, District of Colorado on or before twenty (20) days after this Order becomes final and non-appealable.

2. Because the conduct of Mr. Fairshter and B & F may violate of COLO.RULES OF PROF'L CONDUCT R. 1.7, 1.8, 3.3 and 3.4, as such this matter shall be referred to The State Bar of California and to the Committee on Conduct for the United States District Court for the District of Colorado for further consideration.

3. The Clerk of the United States Bankruptcy Court shall transmit a copy of this decision and the Judgment herein for further review by:

Intake Unit

The State Bar of California

1149 South Hill Street

Los Angeles, California 90015

and

Gregory C. Langham, Clerk

Attn: Secretary for Committee on Conduct

United States District Court for the District of Colorado

Alfred A. Arraj U.S. Courthouse, Room A–105

901 19th Street

Denver, CO 80294–3589

### APPENDIX A—FED.R.BANKR.P.2014

FED.R.BANKR.P. 2014 governs employment of professional persons and provides:

(a) **Application for and Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be

---

46. *See also,* COLO.RULES OF PROF'L CONDUCT R.3.3(a)(1).

filed and, unless the case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

**(b) Services Rendered by Member or Associate of Firm of Attorneys or Accountants.** If, under the Code and this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed, any partner, member, or regular associate of the partnership, corporation or individual may act as attorney or accountant so employed, without further order of the court.

APPENDIX B—Fed.R.Bankr.P.2016

Fed.R.Bankr.P. 2016 provides:

**(a) Application for Compensation or Reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

**(b) Disclosure of Compensation Paid or Promised to Attorney for Debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including

whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

### APPENDIX C—Colo.Rules of Prof'l Conduct R 1.7

Rule 1.7. CONFLICT OF INTEREST: GENERAL

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) For the purposes of this Rule, a client's consent cannot be validly obtained in those instances in which a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances of the particular situation.

Although not identical to Colorado's Rules of Professional Conduct, the California Rules of Professional Conduct also address conflicts of interests in Rule 3–300, which provides:

Rule 3–300. Avoiding Interests Adverse to a Client

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The Client Is Advised In Writing That The Client May Seek The Advice Of An Independent Lawyer Of The Client's Choice And Is Given A Reasonable Opportunity To Seek That Advice; And

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

In addition, California Rules of Professional Conduct, Rule 3–310 provides:

Rule 3–310. Avoiding the Representation of Adverse Interests

(A) For purposes of this rule:

(1) "Disclosure" means informing the client or former client of the relevant

circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

(2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure;

(3) "Written" means any writing as defined in Evidence Code section 250.

(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(2) The member knows or reasonably should know that:

(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

(b) the previous relationship would substantially affect the member's representation; or

(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.

(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

(D) A member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client.

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

(F) A member shall not accept compensation for representing a client from one other than the client unless:

(1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and

(2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and

(3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if:

(a) such nondisclosure is otherwise authorized by law; or

(b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public.

## Rule 1.8: CONFLICT OF INTEREST: PROHIBITED TRANSACTIONS

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is informed that use of independent counsel may be advisable and is given a reasonable opportunity to seek the advice of such independent counsel in the transaction; and

(3) the client consents in writing thereto.

(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.

(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.

(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

(e) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to the lawyer's client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses. A lawyer may forego reimbursement of some or all of the expenses of litigation if it is or becomes apparent that the client is unable to pay such expenses without suffering substantial financial hardship.

(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client consents after consultation;

(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3) information relating to representation of a client is protected as required by Rule 1.6.

(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or

former client without first advising that person in writing that independent representation is appropriate in connection therewith.

(I) A lawyer related to another lawyer as parent, child, sibling, or spouse or as one who has a cohabiting relationship shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.

(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a civil case.

### APPENDIX E—Colo.Rules of Prof'l Conduct R 3.3

RULE 3.3. CANDOR TOWARD THE TRIBUNAL

(a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and later learns that the evidence is false, the lawyer shall take reasonable remedial measures.

(b) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

(c) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

The California Rules of Professional Conduct also address candor towards the tribunal. Rule 5–200 (Trial Conduct) provides:

In presenting a matter to a tribunal, a member:

(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth;

(B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law;

(C) Shall not intentionally misquote to a tribunal the language of a book, statute, or decision;

(D) Shall not, knowing its invalidity, cite as authority a decision that has been overruled or a statute that has been repealed or declared unconstitutional; and

(E) Shall not assert personal knowledge of the facts at issue, except when testifying as a witness.

## APPENDIX F—Colo.Rules of Prof'l Conduct R 3.4

### Rule 3.4. FAIRNESS TO OPPOSING PARTY AND COUNSEL

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative of a client or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

## APPENDIX G—Colo.Rules of Prof'l Conduct R. 8.4

### Rule 8.4. MISCONDUCT

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the act of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a judge, judicial officer, government agency or official;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;

(g) engage in conduct which violates accepted standards of legal ethics; or

(h) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.