**In re Nesbit Lee LACY, also known as Lee Lacy, Debtor.**

**Bennett & Fairshter, LLP, Appellant,**

v.

**Stinky Love, Inc., Appellee.**

**BAP No. CO–05–069.**
**Bankruptcy No. 00–23048–SBB.**

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Jan. 6, 2006.

Matthew J. Fairshter, Joel R. Bennett, with him on the briefs, Bennett & Fairshter, LLP, Pasadena, CA, for Appellant.

Donald J. Quigley, Block Markus Williams, LLC, Denver, CO, for Appellee.

Before McFEELEY, Chief Judge, CLARK, and CORNISH, Bankruptcy Judges.

**1.** For reasons discussed in more detail below, the Court orders that the caption in this case be amended to delete the reference to Nesbit Lee Lacy as an Appellant.

## OPINION

CLARK, Bankruptcy Judge.[1]

The law firm of Bennett & Fairshter, LLP (BF) appeals an Order and Judgment of the United States Bankruptcy Court for the District of Colorado, granting a motion by Stinky Love, Inc. (SLI) to implement the debtor's confirmed plan of reorganization pursuant to 11 U.S.C. § 1142,[2] which we define below as the "Registry Order." The Registry Order requires monies from a post-confirmation lawsuit to be deposited in the bankruptcy court registry, and disallows BF's claim for postpetition, pre-confirmation attorney's fees in its entirety. The appeal of the portion of the Registry Order pertaining to the deposit of funds into the bankruptcy court registry is DISMISSED. The portion of the Registry Order disallowing BF's claim for postpetition attorney's fees is AFFIRMED.

### I. *Background*

1. *The Parties and Claims Relevant to this Appeal*

Nesbit Lee Lacy, the Chapter 11 debtor, owned, among other substantial assets, a 100% interest in Tagert Lakes Holdings, LLC (Holdings). Holdings owned 117 acres of real property located outside of Aspen, Colorado, known as "Tagert Lakes Ranch." The only lien against the Ranch was held by Old Standard Life Insurance Company (Old Standard).

The debtor's financial problems began as a result of contracts and investments made in conjunction with producing and distributing a movie called "Love Stinks." Appellee SLI, a corporation related to the

**2.** Unless otherwise stated, all future statutory references in the text are to title 11 of the United States Code.

production of that movie, sued the debtor prepetition in a California court for breach of contract (SLI Suit). Appellant BF represented the debtor in the SLI Suit.

On November 1, 2000, after an adverse initial ruling in the SLI Suit, the debtor filed his Chapter 11 petition. The bankruptcy court granted SLI relief from the automatic stay to proceed with the SLI Suit in state court, and BF continued to represent the debtor in that postpetition litigation. Although the debtor filed an application seeking authorization to employ BF as counsel in the SLI Suit, the application was objected to and later withdrawn and, therefore, BF's postpetition employment by the debtor was never approved by the bankruptcy court under § 327.

Ultimately, SLI was awarded a judgment against the debtor in the SLI Suit, and that judgment was affirmed by the California Court of Appeals. A bankruptcy court-approved stipulation between the debtor and SLI set the amount of SLI's unsecured claim at $6.26 million. SLI is the debtor's largest unsecured creditor.

BF filed a proof of claim in the debtor's case, asserting a claim in the amount of $284,664.48 for its prepetition legal services in the SLI Suit (Prepetition Fee Claim). Although BF charged the debtor fees and costs for its postpetition services in the SLI Suit,[3] it never filed an application in the bankruptcy court to obtain an order authorizing them as an allowed administrative expense.

### 2. The Confirmed Plan

On September 17, 2001, the bankruptcy court confirmed the debtor's Chapter 11 plan. The confirmed plan states that the debtor retained assets, including his interest in Holdings (which continued to own a sizable portion of the Ranch property post-confirmation), and unsecured creditors were to be paid in full, plus interest, within two years of the plan's effective date. Both SLI and BF were classified as unsecured creditors in the plan.

Payments to unsecured creditors under the confirmed plan were to be partially funded from the net proceeds of a sale of a 35 acre parcel of Holdings' 117 acre Ranch (Ranch Parcel). The court-approved disclosure statement states that the Ranch Parcel was owned by Holdings, and that the Parcel was encumbered by Old Standard's lien in the amount of $6.9 million. The anticipated sales price for the Ranch Parcel was between $10 to $11.5 million, and the debtor disclosed that net proceeds for plan distribution would be between $3 and $4 million.

Paragraph 9.8 of the confirmed plan states that the debtor would not encumber, sell, transfer or dispose of any property in which he held an interest until unsecured claims were paid in full.

### 3. The Ranch Parcel Sale

After the debtor's Chapter 11 case was closed in August 2002, the Ranch Parcel was sold for $13 million. Old Standard was paid approximately $11 million of the sale proceeds. Counsel argued that this payment was made under protest, because the debtor believed that Old Standard's claim was no more than $9 million. Net proceeds from the sale available for distribution under the debtor's confirmed plan amounted to just over $108,000.

### 4. Events in the Chapter 11 Case After the Ranch Parcel Sale

SLI, having received no distribution under the confirmed plan after the Ranch

---

3. *See* discussion *infra* at I.5.

Parcel sale, moved to reopen the debtor's Chapter 11 case. This motion was granted by the bankruptcy court, and on August 21, 2003, the bankruptcy court entered an order granting SLI's motion to convert the debtor's Chapter 11 case to Chapter 7 (Conversion Order).[4] In the Conversion Order, the bankruptcy court found that the debtor had been diverting assets that should have been paid to creditors under the confirmed plan.

The debtor's case was administered under Chapter 7 for several months. But, in January, 2004, the district court reversed the Conversion Order, and the case was reconverted to Chapter 11.

### 5. *The Retainer Agreement and the Old Standard Suit*

After the bankruptcy court's Conversion Order was reversed and while the Chapter 11 case was still open, the debtor and Holdings retained BF on a contingency basis to sue Old Standard to recover amounts that it was allegedly overpaid from the Ranch Parcel sale. The parties' Retainer Agreement grants BF a lien against all of the debtor's property, including any recovery in the litigation, to secure payment of three different types of fees: (1) the Prepetition Fee Claim incurred in the SLI Suit, and provided for in the confirmed plan; (2) fees in the amount of $216,000.00 that were claimed for postpetition, pre-confirmation services provided in the SLI Suit (Postpetition Fee Claim); and (3) any post-confirmation fees incurred in bringing suit against Old Standard (Old Standard Fees).

In November 2004, BF filed a complaint on behalf of the debtor and a predecessor in interest to Holdings (collectively, the "Old Standard Plaintiffs") in the United States District Court for the District of Colorado against Old Standard and others (collectively, the "Old Standard Defendants"), seeking damages exceeding $1 million for alleged breach of contract and usury (Old Standard Suit). The cause of action for usury has since been dismissed.

### 6. *The Registry Motion and Papers Filed in Response Thereto*

While the debtor was moving forward with the Old Standard Suit, SLI conducted discovery to learn where the debtor's assets, including the proceeds from the Ranch Parcel sale, had gone because, although more than three years had passed since the plan's effective date, it had not received any distributions under the confirmed plan. As a result of this discovery, SLI was led to believe that any recovery in the Old Standard Suit, which it viewed as proceeds of the Ranch Parcel sale subject to distribution under the plan, may be improperly diverted by the debtor. Accordingly, SLI filed a motion in the bankruptcy court requesting an order directing the Old Standard Defendants to pay any money that they ultimately agreed or were compelled to pay to the Old Standard Plaintiffs into the bankruptcy court registry (Registry Motion). The bankruptcy court entered a Preliminary Order granting the Registry Motion pending a hearing.

No party to the Old Standard Suit, neither the Old Standard Plaintiffs nor the Old Standard Defendants, objected to the Registry Motion.

The only objection to the Registry Motion was made by BF. Although the Objection's title designates it as the debtor's objection, it is signed by a BF attorney, not the debtor's court-approved bankruptcy counsel. BF argued that the relief sought in the Registry Motion was inap-

---

4. *In re Lacy,* 297 B.R. 786 (Bankr.D.Colo. 2003), *rev'd,* 304 B.R. 439 (D.Colo.2004).

propriate because it would interfere with payment of the Prepetition Fee Claim, Postpetition Fee Claim and Old Standard Fees under the post-confirmation Retainer Agreement, all of which were secured by its lien, notice of which BF filed in the Old Standard Suit on the same day that it filed the Objection. No arguments in opposition to the Registry Motion were made on the debtor's behalf by BF in the Objection.

SLI responded to BF's Objection, contesting BF's purported lien, and the allowance of BF's Prepetition Fee Claim and Postpetition Fee Claim. It did not object to any Old Standard Fees that may be payable as a result of the contingency clause in the Retainer Agreement.

### 7. *The Registry Order*

The bankruptcy court conducted an evidentiary hearing on the Registry Motion. At the hearing, BF represented itself, and the debtor was separately represented by his bankruptcy counsel. Neither Holdings nor the Old Standard Defendants entered an appearance at the hearing. The evidence was that any payment that the Old Standard Plaintiffs received in the Old Standard Suit would be the proceeds from the Ranch Parcel sale.

At the conclusion of the hearing, the bankruptcy court granted the Registry Motion, making its findings of fact and conclusions of law on the record. These oral findings of fact and conclusions of law were later incorporated into an "Order Granting Motion to Implement Plan Regarding Proceeds of Old Standard Lawsuit," and a separate Judgment (collectively, the "Registry Order"). The Registry Order has two relevant components: (1) an order requiring the Old Standard Defendants to deposit funds into the bankruptcy court registry and related findings of fact and conclusions of law (Deposit Portion); and (2) observations, findings of fact and conclusions of law related to BF's lien and fee claims (Claims Portion). Each component of the Registry Order is set forth below.

### A. *The Deposit Portion*

The bankruptcy court concluded that the evidence showed that any recovery by the Old Standard Plaintiffs in the Old Standard Suit would be proceeds of the Ranch Parcel sale that had been committed to unsecured creditors under the debtor's confirmed Chapter 11 plan. It concluded: "[T]he proceeds from this sale are clearly and without qualification subject to the plan."[5] Because the proceeds were committed to unsecured creditors under the confirmed plan, the bankruptcy court concluded that it had post-confirmation jurisdiction to direct their disposition under § 1142. The court noted that its experience with the debtor gave it reason to believe that the debtor may not devote the funds to unsecured creditors. It stated:

> As I have said previously, as the creditor here, [SLI], knows and as the record is plentiful, this debtor has been extraordinarily obstinate, perhaps the most evasive and uncooperative debtor I have ever seen in 17 years on the bench. And as I've also said in prior hearings, his credibility has been demonstrated to be not good—not good at all.[6]

Accordingly, the bankruptcy court granted SLI's Registry Motion and ordered the

---

**5.** Transcript at 45, in Appellant's Appendix at 133.

**6.** *Id.* at 45–46, in Appellant's Appendix at 133–34. By including these findings, the Court in no way implicates BF in the debtor's alleged wrongdoing. We merely include the findings to underscore the bankruptcy court's jurisdiction to enter the Registry Order. *See* discussion *infra* at III.1.A.

Old Standard Defendants to deposit any money that they may be required to pay the Old Standard Plaintiffs in the Old Standard Suit into the court registry so that it could be distributed in accordance with the confirmed plan.

### B. *The Claims Portion*

After making the Deposit Portion of its ruling, the bankruptcy court recognized that BF's Objection and SLI's response thereto really went to BF's right to any proceeds that may be deposited into the registry. It held that while BF's right to a share of any such funds was disputed, it could not adjudicate the validity of BF's alleged lien, or the allowance of the Pre-petition Fee Claim or Old Standard Fees, in the context of the Registry Motion proceedings because, although it would have jurisdiction over the dispute, it did not have a proper record before it on which to do so.

Allowance of BF's Postpetition Fee Claim, however, was another matter. The bankruptcy court held that the Postpetition Fee Claim was not allowable as a matter of law because it had not authorized BF's postpetition, pre-confirmation employment by the debtor under § 327. The bankruptcy court thus ordered that BF's Postpetition Fee Claim be disallowed in its entirety (Fee Disallowance Order).

This appeal followed.

7. 28 U.S.C. § 158(b)-(c).

8. Fed. R. Bankr.P. 8002(a).

9. 28 U.S.C. § 158(a)(1).

10. *See, e.g., National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."), *cited in In re Petroleum Prod. Mgmt., Inc.,* 282

## II. *Appellate Jurisdiction*

■ When all of the parties to an appeal consent to our appellate jurisdiction,[7] this Court has jurisdiction to hear timely-filed appeals[8] from a final order or judgment of the bankruptcy court.[9] But, even when a timely appeal of a final bankruptcy court order is made to this Court, we lack jurisdiction to review it if the appellant lacks standing to bring the appeal.[10]

■ The parties in this appeal have consented to this Court's jurisdiction because they did not timely elect to have the appeal heard by the United States District Court for the District of Colorado, and the Notice of Appeal was timely-filed.[11] BF conceded at oral argument that only the Fee Disallowance Order and the Deposit Portion of the Registry Order were final orders over which this Court may exercise jurisdiction.[12]

We, therefore, have appellate jurisdiction to review the Fee Disallowance Order, and for the reasons stated in section III below, we conclude that it must be affirmed. But, for the reasons discussed immediately below, we do not have appellate jurisdiction over the Deposit Portion of the Registry Order because, although a final order, BF lacks standing to appeal it and, therefore, this part of the appeal must be dismissed.

■ Only "persons aggrieved" by a bankruptcy court's order have standing to

B.R. 9, 13 (10th Cir.BAP2002); *see also Lopez v. Behles (In re American Ready Mix, Inc.),* 14 F.3d 1497, 1499 (10th Cir.1994) (An appellate court "has an independent duty to inquire into its jurisdiction over a dispute, even where neither party contests it and the parties are prepared to concede it.").

11. Fed. R. Bankr.P. 8001(e).

12. 28 U.S.C. § 158(a).

appeal.[13] A "person aggrieved" is one " 'whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court ....' "[14] Thus, " '[l]itigants are "persons aggrieved" if the order [appealed] diminishes their property, increases their burdens, or impairs their rights.' "[15] The Appellant bears the burden of establishing its standing on appeal,[16] and if there is no dispute as to relevant facts, an appellate court may decide the issue of standing without remanding the case for further proceedings.[17]

BF is not a person aggrieved by the Deposit Portion of the Registry Order and, therefore, it lacks standing to appeal it. The Deposit Portion does not order BF to take any action, but rather orders the Old Standard Defendants to deposit any money that they may be required to pay the Old Standard Plaintiffs into the bankruptcy court registry. The bankruptcy court held that if funds were ever deposited into the registry, BF could assert a claim to them, and that when such a claim was made, it would determine the

validity of BF's alleged lien and the allowance of its Prepetition Fee Claim and the Old Standard Fees. Until funds are deposited into the registry, BF asserts a claim to the funds and the bankruptcy court disallows its claim, BF is not aggrieved by the Deposit Portion of the Registry Order. Accordingly, the appeal of the Deposit Portion of the Registry Order must be dismissed.

■ In so holding, we recognize that BF maintains that this appeal, including the appeal of the Deposit Portion of the Registry Order, is brought by itself, as well as the debtor and Holdings.[18] Yet, neither of these parties have actually appealed the Registry Order. Holdings is not listed as an appellant in the Notice of Appeal and, therefore, it has not brought this appeal.[19] Unlike Holdings, BF named the debtor as an Appellant in the Notice of Appeal. But, this listing is ineffective because BF, as debtor's counsel in the Old Standard Suit, had no authority to act on behalf of the debtor in proceedings related to the Registry Motion in the Chapter 11

---

13. *See, e.g., Weston v. Mann (In re Weston)*, 18 F.3d 860, 863 (10th Cir.1994); *American Ready Mix*, 14 F.3d at 1500; *Petroleum Prod.*, 282 B.R. at 14.

14. *American Ready Mix*, 14 F.3d at 1500 (quoting *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir.1989)), *quoted in Petroleum Prod.*, 282 B.R. at 14.

15. *American Ready Mix*, 14 F.3d at 1500 (quoting *GMAC v. Dykes (In re Dykes)*, 10 F.3d 184, 187 (3d Cir.1993), and *Holmes*, 881 F.2d at 940), *quoted in Petroleum Prod.*, 282 B.R. at 14.

16. *American Ready Mix*, 14 F.3d at 1500; *Petroleum Prod.*, 282 B.R. at 14.

17. *American Ready Mix*, 14 F.3d at 1500; *Petroleum Prod.*, 282 B.R. at 14.

18. Notice of Appeal at 1, in Appellant's Appendix at 1 (stating that the debtor and BF appeal the Registry Order); Appellant's Brief at 1 (stating that BF, the debtor and Holdings appeal the Registry Order).

19. Fed. R. Bankr.P. 8001(a); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988) (Interpreting Fed. R.App. P. 3(c), the Court stated: "The failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal."); *Storage Tech. Corp. v. United States District Court for the D. of Colo.*, 934 F.2d 244, 248 (10th Cir.1991) (in bankruptcy appeals "each and every party must be specifically named in the notice of appeal or in a functionally equivalent document properly listing the appealing parties and filed within the appeal period."); *Groetken v. Davis (In re Davis)*, 246 B.R. 646, 655 (10th Cir. BAP 2000), *aff'd in relevant part*, 35 Fed.Appx. 826 (10th Cir.2002) (same).

case, and neither the debtor nor his bankruptcy counsel signed the Notice of Appeal.

■■■ Accordingly, Holdings and the debtor are not parties to this appeal, and their purported participation herein does not prevent dismissal of the appeal related to the Deposit Portion of the Registry Order. And, BF lacks authority and standing to make arguments on their behalf.[20]

## III. Discussion

Having dismissed the appeal to the extent that it is from the Deposit Portion of the Registry Order, we must consider only two issues. First, notwithstanding BF's lack of standing to appeal the Deposit Portion of the Registry Order, we must determine whether the bankruptcy court had jurisdiction to enter both the Deposit Portion and the Fee Disallowance Order. As discussed in section III.1, we conclude that the bankruptcy court had jurisdiction to enter both components of the Registry Order and, therefore, it is not void. Second, we must review the only portion of the Registry Order over which we have appellate jurisdiction—the Fee Disallowance Order. For the reasons stated in section III.2, we conclude that the Fee Disallowance Order should be affirmed

### 1. The Bankruptcy Court had Jurisdiction to Enter the Registry Order

■■■ Regardless of BF's standing in this appeal, this Court has an independent obligation to review the bankruptcy court's jurisdiction to enter the Registry Order inasmuch as an order that is entered by a court without jurisdiction is void and must be vacated.[21] The Registry Order is not void because the bankruptcy court had jurisdiction to order the deposit of any potential Old Standard Suit funds into the court registry, and to enter the Fee Disallowance Order.

### A. Deposit Portion

■■■ Under § 1142(a), "the debtor . . . shall carry out the plan and shall comply with any orders of the court[,]"[22] including a Chapter 11 confirmation order. The bankruptcy court can enforce this duty under §§ 105(a) and 1142, which allow it to take "any action or mak[e] any determination necessary or appropriate to enforce or implement" a court order, such as its confirmation order, "to prevent an abuse of process[,]"[23] or to "direct the debtor and any other necessary party . . . to perform any . . . act . . . that is necessary for the consummation of the plan."[24] Orders made pursuant to these powers are within the bankruptcy court's jurisdiction under 28 U.S.C. §§ 157 and 1334(b).

The debtor's confirmed plan expressly requires the proceeds of the Ranch Parcel sale to be paid to creditors. The only evidence before the bankruptcy court was that any funds received by the Old Standard Plaintiffs in the Old Standard Suit would be a recovery of the Ranch Parcel

**20.** See, e.g., Utah v. Babbitt, 137 F.3d 1193, 1202–03 (10th Cir.1998) (prudential principles that bear on the question of standing include "the general prohibition of a litigant's raising another person's legal rights.").

**21.** See, e.g., United States v. Buck, 281 F.3d 1336, 1344 (10th Cir.2002) (judgment is void if rending court lacked jurisdiction to enter it); V.T. A., Inc. v. Airco, Inc., 597 F.2d 220 (10th Cir.1979) (same); see also Orner v. Sha-

lala, 30 F.3d 1307, 1310 (10th Cir.1994) (motion under Fed.R.Civ.P. 60(b)(4) that judgment is void may be raised at any time).

**22.** 11 U.S.C. § 1142(a).

**23.** Id. § 105(a).

**24.** Id. § 1142(b).

sale proceeds. The bankruptcy court further found that the debtor is not altogether trustworthy and may not comply with his duties under § 1142(a) to carry out the plan and or comply with court orders. Deposit of Old Standard Suit funds into the court registry, therefore, was necessary to "enforce or implement" the bankruptcy court's order confirming the debtor's plan, to "prevent an abuse of process[,]" and to "direct" the Old Standard Plaintiffs, including the debtor, to perform an act "necessary for the consummation of the plan." This being so, the Deposit Portion of the Registry Order was well within the bankruptcy court's subject matter jurisdiction.

In addition, the bankruptcy court had jurisdiction to require the Old Standard Plaintiffs to deposit funds into the court's registry under the express terms of the confirmed plan. The plan states: "Notwithstanding confirmation of the Plan, the [bankruptcy court] shall retain jurisdiction" to implement the plan provisions and enter "orders in aid of consummation of the Plan." [25] For reasons already discussed, the Deposit Portion of the Registry Order was necessary to implement the plan and aid consummation of the plan.

BF contends that Old Standard would only be required to pay the Old Standard Plaintiffs damages as a result of a post-confirmation breach of contract and, therefore, the proceeds are not within the bankruptcy court's jurisdictional reach. This argument fails to take into account that the only evidence was that any such funds are in fact the Ranch Parcel sale proceeds that are unquestionably committed to creditors under the debtor's plan. The bankruptcy court had an obligation to assert its jurisdiction over any funds that

may be paid to enforce the plan that it confirmed and to prevent abuse of the bankruptcy process.

### B. *The Fee Disallowance Order*

The bankruptcy court had jurisdiction to enter the Fee Disallowance Order, which disallows BF's Postpetition Fee Claim in its entirety.

 BF maintains that payment of the Postpetition Fee Claim may be made from funds that it might recover in the Old Standard Suit, which, based on uncontested evidence, the bankruptcy court found would be property subject to distribution under the debtor's confirmed plan. This being so, the bankruptcy court had jurisdiction to adjudicate the allowance of the Postpetition Fee Claim under §§ 327, 328, 329 and 330, and 28 U.S.C. §§ 157(b) and 1334(b). Furthermore, the plan expressly states that "[n]otwithstanding confirmation of the Plan, the [bankruptcy court] shall retain jurisdiction" to determine the allowance of claims, implement the plan, and to enter orders to in aid of consummation of the plan.[26] Accordingly, the bankruptcy court had jurisdiction to disallow BF's Postpetition Fee Claim.

### 2. *The bankruptcy court did not err in entering the Fee Disallowance Order*

 Section 327(e) requires a debtor in possession to obtain bankruptcy court approval to employ an attorney that has represented the debtor in a particular matter. It is very well-established that an attorney whose employment is not approved by the court in accordance with § 327 is not entitled to be paid his or her fees or costs from assets of the estate.[27]

---

**25.** Confirmed Plan ¶ 11.2.4, in Appellant's Appendix at 85.

**26.** *Id.* ¶¶ 11.2.1., 11.2.2, & 11.2.4, in Appellant's Appendix at 85.

**27.** *See* 11 U.S.C. §§ 328–330; *In re Albrecht,*

Based on this law, which BF has not attempted to refute, we affirm the Fee Disallowance Order.

 Furthermore, BF's Postpetition Fee Claim would not be allowable or payable under the confirmed plan to which it is bound.[28] The plan expressly states that administrative expenses of the estate, such as the postpetition, pre-confirmation professional fees and costs that comprise BF's Postpetition Fee Claim, are payable only to the extent that they are allowed, and allowance of such claims is contingent on the professional filing an application with the bankruptcy court within thirty days following the plan's effective date.[29] It is undisputed that BF has not filed an application seeking approval of its Postpetition Fee Claim and, therefore, its Postpetition Fee Claim is not allowable and can not be paid from property distributed under the plan, such as the Ranch Parcel sale proceeds.

## IV. Conclusion

The appeal of the Deposit Portion of the Registry Order is DISMISSED. The Fee Disallowance Order is AFFIRMED.

---

233 F.3d 1258 (10th Cir.2000); *In re Land,* 943 F.2d 1265 (10th Cir.1991).

**28.** 11 U.S.C. § 1141(a); *see In re K.D. Co., Inc.,* 254 B.R. 480, 490 (10th Cir. BAP 2000).

**29.** Confirmed Plan Art. IV & ¶ 9.6, in Appellant's Appendix at 76–77 & 83.