FILED
United States Court of Appeals
Tenth Circuit

December 23, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In Re:

NESBIT LEE LACY, a/k/a
N. LEE LACY,

      Debtor.

_____

MATTHEW J. FAIRSHTER;
BENNETT & FAIRSHTER, LLP,

      Appellants,

v.

STINKY LOVE, INC.,

      Appellee.

No. 07-1424
(D.C. No. 06-cv-01531-EWN)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **PORFILIO**, and **ANDERSON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Matthew J. Fairshter and Bennett and Fairshter, LLP (referred to collectively here as B&F)[1] appeal from the district court's order affirming an order of the bankruptcy court disallowing all pre-petition attorney fees and ordering disgorgement of all sums paid to B&F by the debtor Nesbit Lee Lacy. We affirm.

## BACKGROUND

B&F, a California law firm, represented Mr. Lacy both before and after he filed bankruptcy. The firm defended Mr. Lacy against a suit by a major creditor and prosecuted an action on his behalf to recover funds from a lien holder. In attempting to ensure payment for its services, however, B&F took a number of actions that the bankruptcy court found worthy of sanction. It failed to follow procedures for obtaining court approval to represent Mr. Lacy; made efforts to obtain superior treatment for its claim over that of other unsecured creditors; and failed to disclose critical facts to the court and other litigants about its payment arrangements with Mr. Lacy. As a result, the bankruptcy court disallowed any fees for pre-petition and post-petition services and ordered B&F to disgorge any and all sums paid to it by Mr. Lacy.

---

[1] The record indicates that Bennett and Fairshter, LLP merged with another firm, Beckham & Gossett, on January 1, 2006. Aplt. App. at 95. We continue to refer to the firm by its previous name, as it was known during most of the events relevant to this appeal.

### 1.  The SLI Suit

The events leading to this proceeding began when Mr. Lacy, a Colorado rancher, decided to become the financial backer of a Hollywood production.  He formed a closely-held limited liability company for this purpose called Independent Artists (Independent).  Independent's efforts focused on a film called "Love Stinks," written, produced and directed with the involvement of appellee Stinky Love, Inc. (SLI), a Hollywood production company.  Independent offered to distribute "Love Stinks" and made financial commitments to SLI concerning distribution expenses for the film.

Unfortunately, "Love Stinks" bombed at the box office.  After the film failed to produce the anticipated revenue, SLI sued Independent and Mr. Lacy in California state court for breach of contract, asserting that Independent had failed to pay SLI money it owed for the film's marketing expenses.  SLI also sought to hold Mr. Lacy personally liable for those expenses.

Mr. Lacy hired B&F to defend him in the California breach of contract suit.  The record does not specify his payment arrangements with B&F or how much, if any, he actually paid the firm to represent him.  It is unclear when he hired B&F or exactly what services it performed for him in the California litigation.[2]

---

[2]     The California suit involved not only court action but also an arbitration proceeding.  *See Stinky Love, Inc. v. Lacy*, No. B163377, 2004 WL 1803273, at *4 (Cal. App. Aug. 13, 2004) (unpublished).

On November 1, 2000, after a California court entered an initial ruling against him, Mr. Lacy filed Chapter 11 bankruptcy in Colorado. He did not employ B&F as bankruptcy counsel, but used a separate firm. After B&F received notice of the bankruptcy, it took two actions relevant to this appeal. First, it filed an application with the bankruptcy court for permission to continue representing Mr. Lacy post-petition in the California litigation. Second, it filed a proof of claim in the bankruptcy for approximately $284,000, representing fees due for pre-petition legal services already provided in the SLI suit.

SLI and the United States Trustee opposed B&F's application to represent Mr. Lacy. B&F responded by abandoning the application. But it continued to represent Mr. Lacy in the SLI suit without permission from the bankruptcy court. In fact, B&F never obtained such permission. As for B&F's claim for pre-petition fees, Mr. Lacy's Chapter 11 Plan reduced it by nearly half, trimming it from just over $284,000 to $150,000.[1]

SLI also reacted to the bankruptcy filing. On April 3, 2001, it obtained relief from the automatic stay, permitting it to continue the California litigation

---

[1]    B&F continues to assert that it holds a confirmed claim of $284,000 under the Plan. *See* Aplt. Br. at 13. The bankruptcy court concluded, however, that the unsecured claim provided in the Plan amounted to $150,000. Aplt. App. at 110, 120 n.28. B&F has failed to provide any supporting documentation to establish the higher value it asserts for its claim; we therefore cannot disturb the bankruptcy court's findings concerning the value of its confirmed claim. *See* Fed. R. App. P. 10(b)(2) (requiring appellant challenging district court's factual conclusion to provide record evidence relevant to finding).

against Mr. Lacy. The California Court of Appeals subsequently affirmed the judgment in favor of SLI. SLI obtained an unsecured claim in the bankruptcy for $6.26 million, making it Mr. Lacy's largest creditor.

## 2. Confirmation of the Plan

On September 17, 2001, the bankruptcy court confirmed Mr. Lacy's Chapter 11 Plan. The Plan called for payment in full of unsecured creditors within two years. Both SLI and B&F were classified as unsecured creditors under the Plan.

Under the Plan, Mr. Lacy retained certain assets, including his interest in Tagert Lakes Holdings, LLC (Tagert Lakes). Tagert Lakes was a limited liability company that owned his ranch property outside Aspen. A substantial portion of the ranch property was to be sold in order to pay his unsecured creditors. The property was encumbered by a lien in favor of Old Standard Life Insurance Company (Old Standard), but it was anticipated that the sales price would be higher than the amount of the lien and that Mr. Lacy would have net proceeds of between $3 and 4 million for distribution to creditors, including SLI and B&F.

## 3. Ranch Parcel Sale

The bankruptcy court entered its final decree on June 26, 2002. In August 2002, it closed Mr. Lacy's bankruptcy case. After the closing, the Tagert Lakes parcel sold for $13 million. Although this was more than expected, Old Standard

also made a larger-than-expected claim of nearly $11 million against the sales proceeds.  Mr. Lacy paid this claim under protest.

Ultimately, the net proceeds of the sale available for distribution to creditors under the confirmed plan came to only $108,000.  Believing that some of this reduction was due to diversion or concealment of assets by Mr. Lacy, SLI resolved to take further steps to protect its interests.

### 4.  The Retainer Agreement

Having received nothing from the ranch sale, SLI petitioned the bankruptcy court to re-open Mr. Lacy's bankruptcy.  The bankruptcy court found that he had been diverting assets that should have been paid to creditors under the confirmed plan.  It reopened the Chapter 11 case.

Around this time, a new source of potential funds became available to the bankruptcy estate.  Mr. Lacy retained B&F in May 2004 to sue Old Standard and related entities to recoup the alleged overpayment resulting from the ranch parcel sale.  There was a problem with re-employing B&F, however:  it had not yet been paid for the work it had already performed on Mr. Lacy's behalf in the SLI suit.  In order to ensure payment for services already rendered, as well as payment for services to be rendered in the Old Standard suit, Mr. Lacy and Tagert Lakes executed a retainer agreement in favor of B&F.  The agreement granted B&F a lien secured by Mr. Lacy's assets to ensure the payment of three types of fees allegedly due to B&F:  (1) the pre-petition fees incurred in the SLI suit, already

provided for in the confirmed Plan–but now covered in the retainer agreement to the full amount of $284,000 rather than the $150,000 previously allowed under the Plan; (2) fees of $216,000 that B&F claimed for post-petition, pre-confirmation services provided to Mr. Lacy in the SLI suit, notwithstanding the fact that B&F's services were never approved by the bankruptcy court; and (3) post-confirmation fees incurred in bringing suit against Old Standard, also not presented to or approved by the bankruptcy court. B&F did not notify SLI of the retainer agreement. Nor did it notify Mr. Lacy's bankruptcy counsel that it was taking a lien position on the pre-petition claim.

### 5. The Registry Motion

In November 2004, B&F filed a complaint in Colorado federal district court on behalf of Mr. Lacy against Old Standard. Concerned that Mr. Lacy might fail to pay over to creditors sums he recovered from third parties, SLI filed a motion in the bankruptcy court requesting that any sums paid by Old Standard be remitted into the bankruptcy court registry.

Both Mr. Lacy and B&F opposed this motion. They complained that payment into the registry would interfere with B&F's lien against Mr. Lacy's property created by the retainer agreement. On the same day that it filed its objection, B&F gave notice in the Old Standard suit of its retainer agreement with Mr. Lacy. Mr. Lacy went further. He attached a copy of the retainer agreement to his opposition filed in the bankruptcy court. Before Mr. Lacy filed his

opposition, the bankruptcy court knew nothing about the retainer agreement or the lien that it created in favor of B&F.

### 6. Order Denying Post-Petition Fees

After a hearing, the bankruptcy court granted SLI's motion requiring that the funds from the Old Standard litigation be paid into the court registry. It also disallowed B&F's claim for post-petition, pre-confirmation attorney fees of approximately $216,000, ruling that B&F had not received authorization to act as post-petition counsel for Mr. Lacy.

B&F appealed to the Tenth Circuit Bankruptcy Appellate Panel (BAP), which upheld the order. *Bennett & Fairshter, LLP v. Stinky Love, Inc. (In re Lacy)*, 335 B.R. 729 (10th Cir. BAP 2006). The BAP ruled that B&F was not aggrieved by the registry order and therefore lacked standing to appeal that portion of the bankruptcy court's order. *Id.* at 736-37. It further held that the bankruptcy court permissibly denied B&F post-petition fees, since the firm had never obtained permission from the bankruptcy court to represent Mr. Lacy after he filed his petition. *Id.* at 739-40. B&F did not appeal this BAP decision.

### 7. The Settlement

While the appeal to the BAP was pending, B&F filed a Notice of Attorney's Lien in the Old Standard suit, again without informing the bankruptcy court or SLI. Other than denying the post-petition, pre-confirmation fees, the

bankruptcy court had not yet seriously sanctioned B&F. All that was about to change.

The immediate catalyst for sanctions was a settlement achieved by Mr. Lacy and SLI. After five years of litigation, the parties entered into a global settlement resolving all outstanding issues between them. They filed a settlement agreement together with a motion for approval with the bankruptcy court. They provided notice to all concerned, requiring that any objection be filed by December 16, 2005. No party objected within the time provided.

On December 19, 2005, three days after the deadline for objections, B&F filed an objection to the settlement. The essence of its objection was that the proposed settlement might diminish B&F's pro rata recovery on its own claim and would give SLI priority as to a small portion of its claim. B&F later requested an extension of time to file the untimely objection, blaming the error on a paralegal and calendar issues.

The settlement agreement came on for a contested hearing on February 21, 2006. That morning, B&F faxed a notice of withdrawal of its objection to Mr. Lacy's bankruptcy counsel. B&F did not notify the court or SLI's counsel that it was withdrawing its objection. SLI came to court prepared to argue the objection, but B&F did not show up at the hearing.

The bankruptcy court approved the settlement agreement. It then ordered B&F to show cause why it should not be sanctioned for failing to notify the

parties of its withdrawal of its objection and for other unprofessional conduct throughout the case. The court found that B&F had acted "irresponsibly, recklessly, unprofessionally, and with great neglect." Aplt. App. at 60.

### 8. The Sanction Order

Mr. Fairshter testified at the hearing on the order to show cause. He explained that the firm's actions had been taken in good faith.[2] The bankruptcy court disagreed. It issued an order sanctioning B&F. It found that Mr. Fairshter's testimony "was not credible, was internally inconsistent, and contradicted statements made by [Mr. Lacy's] bankruptcy counsel." *Id.* at 114. It further found that B&F, including Mr. Fairshter, individually, had committed sanctionable conduct by:

(1) failing to become employed pursuant to § 327 of the Bankruptcy Code, but continuing to represent Mr. Lacy, and to charge and bill significant fees;

(2) furtively taking an attorney's lien, post-confirmation, on proceeds of property subject to the Plan, and in violation of the Plan;

---

[2]    The Order to Show Cause, issued March 8, 2006, set a hearing for May 9, 2006. B&F states that it did not receive the order until March 13, 2006. Due to a scrivener's error, it required that B&F file a response by March 10, 2006. Rather than attempt to clarify or correct the error, B&F faxed a copy of its opposition to the Order to Show Cause to the court on May 8, 2006, two months after the entry of the show cause order and one day before the hearing. B&F did not file the original of its opposition until May 9, 2006, the day of the hearing.

(3) surreptitiously violating the Plan and secretly preempting or priming other creditors' distributions under the Plan;

(4) engaging in unprofessional conduct by advancing B&F's own interests in derogation of Mr. Lacy's by objecting to the global settlement with SLI; and

(5) failing to consult with Mr. Lacy's bankruptcy counsel concerning B&F's conduct, thereby creating a conflict of interest with its client, Mr. Lacy.

As a sanction, the bankruptcy court denied B&F all pre-petition legal fees from the California SLI suit, including the $284,000 previously disclosed in its proof of claim. It also ordered B&F to account for and disgorge all fees received from Mr. Lacy and any of the companies he owned, pre-petition or post-petition. On appeal, the district court upheld the sanction.

## ANALYSIS

### 1. Standard of Review

We review the bankruptcy court's decision imposing sanctions for an abuse of discretion. *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1415 (10th Cir. 1996). A bankruptcy court abuses its discretion where it bases its ruling "'on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, (1990)).

## 2. Abuse of Discretion

B&F contends that the bankruptcy court abused its discretion in disallowing all pre-petition and post-petition legal fees and ordering disgorgement of those fees already paid. B&F claims that the aggregate amount disallowed to date amounts to over half a million dollars. While this may be true, it does not accurately represent B&F's situation on appeal. The BAP previously upheld the denial of $216,000 in post-petition, pre-confirmation fees for work performed in the SLI suit. *In re Lacy*, 335 B.R. at 739-40. B&F's failure to appeal that decision precludes it from challenging the denial of those fees in this appeal. *See Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1266 (10th Cir. 2008) (discussing applicability of issue preclusion where party has failed to appeal prior adverse decision), *petition for cert. filed* (U.S. Nov. 10, 2008) (No. 08-630). Accordingly, we consider the sanction order only as it pertains to the denial and/or disgorgement of the $284,000 in *pre-petition fees*.

With regard to these fees, the bankruptcy court relied on its equitable powers to sanction B&F. These powers are codified in 11 U.S.C. § 105(a), which states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"[T]his provision grants bankruptcy courts the power to sanction conduct abusive of the judicial process." *Scrivener*, 535 F.3d at 1263 (quotation omitted). But "a bankruptcy court's exercise of its authority under § 105(a) may not contravene or disregard the plain language of a statute." *Id.*

The fees the bankruptcy court ordered disgorged were earned prior to the filing of Mr. Lacy's bankruptcy, at a time when B&F did not require bankruptcy court approval to represent him. As authority for its denial and disgorgement of such pre-petition fees, the bankruptcy court relied on *In re Bartmann*, 320 B.R. 725 (Bankr. N.D. Okla. 2004). The *Bartmann* court gave three reasons for ordering disgorgement of fees paid pre-petition to the debtor's attorney. First, the attorney had been paid in violation of an injunction. *Id.* at 743.[1] Second, the attorney's receipt of estate funds without court permission should have been disclosed because it had a bearing on his qualification to represent the estate. *Id.* at 748. Finally, the attorney had failed to disclose his receipt of compensation in contemplation of or in connection with the debtor's bankruptcy filing as required by 11 U.S.C. § 329(a). *Id.* at 747-48.

The bankruptcy court relied primarily on the second and third factors identified in *Bartmann* to justify the sanction imposed on B&F. It found that the

---

[1] Here, the Plan prohibited Mr. Lacy from encumbering, selling, transferring, or disposing of any property in which he held an interest until the unsecured claims were paid in full. Aplt. App. at 110.

firm had continued to represent Mr. Lacy notwithstanding its active pursuit of an interest adverse to the estate, namely, its aggressive attempts to collect the full amount of the pre-petition fees. The court found that this conduct implicitly violated 11 U.S.C. § 327, which permits the trustee to employ only attorneys who do not hold interests adverse to the debtor or to his estate.

More essentially, the court also relied on the third factor present in *Bartmann*: the attorney's failure to disclose his compensation arrangement with the debtor as required by 11 U.S.C. § 329(a). Section 329(a) states as follows:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, *if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case* by such attorney, and the source of such compensation.

(Emphasis added). "[A]n attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor . . . and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney." *Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993) (citations omitted). The bankruptcy court acknowledged that B&F had disclosed its unsecured claim for pre-petition fees in its application for employment and that Mr. Lacy had disclosed the same in the Plan and Disclosure Statement. But it found that B&F's

later, undisclosed attempt to obtain a secured claim for the full amount of its pre-petition fees "contraven[ed] the spirit of section 329(a) and Fed. R. Bankr. P. 2014." Aplt. App. at 119.[2]

Section 329(a) requires disclosure of payments or agreements to pay (1) made or arranged for "services rendered or to be rendered in contemplation of or in connection with the [bankruptcy] case" (2) that were agreed to or paid no earlier than one year prior to filing of the petition. *See Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1004 (5th Cir. 1995). Both elements of this test are satisfied here. First, the services provided under the retainer agreement were rendered in connection with the bankruptcy case. As discussed further, *infra*, the proceeds of the Old Standard suit were committed to unsecured creditors under the Plan and were therefore part of the bankruptcy estate. Although the pre-petition defense of the SLI suit occurred before the filing of the bankruptcy,[3] B&F made their representation of Mr. Lacy in the Old Standard suit contingent on

---

[2] Rule 2014 deals with the procedures for seeking approval from the bankruptcy court to become employed as an attorney or other professional working on behalf of the estate.

[3] The fees arranged for the SLI defense may nevertheless have been "in connection with" the bankruptcy, in that they related to its precipitating cause, the large judgment in favor of SLI against Mr. Lacy. *See Bartmann*, 320 B.R. at 747 (stating fees are "in connection with" bankruptcy when they relate to its precipitating cause). In light of the separate connection created by the provisions of the retainer agreement, we need not resolve whether the original connection of these fees to the bankruptcy created a separate and ongoing obligation to disclose any fee agreements reached with Mr. Lacy concerning fees for the SLI defense.

-15-

his agreement to give B&F a security interest for the full amount of their pre-petition claim, thus connecting the fees to the bankruptcy and triggering the duty of disclosure.

The second element of this test is also satisfied. The retainer agreement, through which B&F attempted to secure payment of the pre-petition fees, was "made after one year before the date of the filing of the petition," 11 U.S.C. § 329(a). Thus, the bankruptcy court acted within its statutory authority in denying B&F its pre-petition fees and in ordering B&F to account for and disgorge all sums paid by Mr. Lacy.

### 3. B&F's remaining arguments

We dispose quickly of the remainder of B&F's contentions. B&F argues that its lien was entirely proper and not in derogation of the Plan, for two reasons: (1) the lien was not taken against assets of the bankruptcy estate; and (2) the lien was for (a) services rendered three years after confirmation of the Plan (the Old Standard litigation) and (b) to secure payment on a claim for which the debtor was in breach of the Plan (the $284,000 due for pre-petition work). Neither of these arguments has merit.

The bankruptcy court found that B&F's lien was taken "on proceeds of property subject to the Debtor's Plan and in violation of that Plan." Aplt. App. at 108. B&F fails to show that this finding was clearly erroneous. The lien extended to "any interest [Mr. Lacy might] hereafter acquire in any property" and

-16-

it specifically included "the fruits and proceeds of any judgment, settlement, or disposition of this or any other matter wherein [B&F] represent[s] [Mr. Lacy]," *id.* at 8, which obviously included any recovery from Old Standard that was to be allocated to creditors in accordance with the Plan. The BAP determined as much when it stated, in upholding the bankruptcy court's registry order:

> The debtor's confirmed plan expressly requires the proceeds of the Ranch Parcel sale to be paid to creditors. The only evidence before the bankruptcy court was that any funds received by the Old Standard Plaintiffs in the Old Standard Suit would be a recovery of the Ranch Parcel sale proceeds.

*In re Lacy*, 335 B.R. at 738-39. In sum, the bankruptcy court did not clearly err in determining that the lien was taken against assets of the estate and in derogation of the Plan.

Nor was B&F entitled to cut a separate deal with Mr. Lacy to collect fees that were due B&F under the provisions of the Plan. The provisions of a confirmed plan are binding on creditors. 11 U.S.C. § 1141(a). Creditors are limited to rights afforded by the plan, and may not take actions inconsistent with the method of payment provided for in the plan to collect their debts. *See United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) (applying analogous provision in Chapter 13 case). The retainer agreement improperly permitted B&F to collect fees in derogation of the Plan.

B&F argues that only the "net proceeds" of the Ranch Sale were to be included in the Plan. Thus, any sums paid over to B&F under the retainer

-17-

agreement, including payment for pre-petition fees unrelated to the sale, were transaction costs of the sale and were not part of the "net proceeds" available to pay creditors under the Plan. This argument is meritless. Though B&F later attempted to condition its work on the Old Standard suit on payment of the pre-petition fees, B&F points to nothing in the Plan that contemplated that these fees would be considered part of the transaction costs of the sale.

B&F contends that the bankruptcy court showed lack of restraint and bias in fashioning a sanction that deprived it of the entire amount of its pre-petition fees. B&F's conduct in this case was egregious. We detect no bias on the part of the bankruptcy court in responding to numerous instances of egregious misconduct.

B&F argues that counsel for the debtor and SLI did not seek sanctions to compensate them for attorney's fees they expended in preparing for the hearing of February 21, 2006. But B&F's failure to appear at that hearing represented only a small quantum of its overall misconduct in the case. Opposing counsel's leniency on one occasion does not justify reversal of a sanction imposed primarily for other misconduct in the case under the authority of § 105(a).

B&F argues that it was not afforded due process because the Order to Show Cause did not provide notice that the bankruptcy court contemplated a complete disgorgement and forfeiture of their pre-petition fees. B&F does not describe any additional arguments in opposition to the sanction imposed it would have raised

had it been given an opportunity. The firm has now raised a plethora of arguments in the district court and in this court, all of them lacking in merit.

B&F argues that the bankruptcy court lacked jurisdiction, post-confirmation, to disallow its claim for pre-petition fees. It cites 11 U.S.C. § 1142, which it contends limits the authority of a bankruptcy court following confirmation of a Chapter 11 plan to matters concerning the implementation or execution of the confirmed plan. But the question of whether B&F should be sanctioned for attempting to circumvent the Plan falls within the ambit of Plan enforcement under § 1142. B&F presents no authority to the contrary. In any event, we do not read this statute as narrowly as B&F does. *See, e.g., United States Tr. v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1237 (10th Cir. 1998) (holding bankruptcy court retained jurisdiction under § 1142(b) to enforce payment of United States Trustee fees, because "post-confirmation jurisdiction [pursuant to § 1142(b)] is appropriate when the matter is 'related-to' the bankruptcy case. . . .For example, courts will exercise jurisdiction over post-confirmation disputes if the matter sufficiently affects creditors' recoveries under a plan of reorganization." (quotations omitted)).

Finally, B&F contends that the bankruptcy court "ignored" its lawful post-confirmation attorney's lien filed in Colorado federal district court. B&F's charging lien, however, created under Colo. Rev. Stat. § 12-5-119, "is limited to

securing the payment of the reasonable value of attorney fees in the particular matter then being handled by the attorney." *People v. Carvell (In re Estate of Benney)*, 790 P.2d 319, 323 (Colo. 1990) (en banc). Even if a charging lien could affect the bankruptcy court's jurisdiction to disallow fees, a proposition that seems dubious, B&F's lien did not extend to the pre-petition fees earned in the prior representation and could not in and of itself have prevented the bankruptcy court from disallowing those fees.

## CONCLUSION

We AFFIRM the order of the district court.

Entered for the Court

Stephen H. Anderson
Circuit Judge